**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA LITTLEJOHN, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>FERRARA CANDY COMPANY, an Illinois Corporation,<br><br>Defendant. | Case No. 3:18-cv-00658-AJB-WVG<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S RESPONSE TO OBJECTIONS**<br><br>Date: June 14, 2019<br>Time: 2:00 p.m.<br>Ctrm: 4A (4th Floor Schwartz)<br>Judge: Hon. Anthony J. Battaglia |

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

II. A District Court Has Broad Discretion to Determine Whether a Class Action Settlement Is Fair, Reasonable, and Adequate ......................................................... 3

III. *Bluetooth* Is Distinguishable from the Present Settlement ............................. 4

IV. The Injunctive Relief Offered by The Settlement Is Not "Valueless" ............ 7

V. Class Counsel's Modest Fee Request Is Supported Under the Lodestar Approach ..................................................................................................................... 9

VI. The Objections to The Incentive Award Are Baseless ................................. 11

VII. The Small Number of Objections and Opt-Outs Supports Approval of The Settlement ................................................................................................................ 12

VIII. Conclusion ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ................................................................................ 12

*Carr v. Tadin, Inc.*,
  51 F. Supp. 3d 970 (S.D. Cal. 2014) .............................................................................. 2, 9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ......................................................................................... 4

*Graciano v. Robinson Ford Sales, Inc.*,
  144 Cal. App. 4th 140 (2006) ........................................................................................ 10

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (2004) ................................................................................................... 10

*Grodensky v. Artichoke Joe's Casino*,
  171 Cal. App. 4th 1399 (2009) ...................................................................................... 10

*Guttmann v. Ole Mexican Foods, Inc.*,
  No. 14-CV-04845-HSG, 2016 WL 91074261 (N.D. Cal. Aug. 1, 2016) ............. 2

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................. passim

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ......................................................................................... 4

*In re Quaker Oats Labeling Litig.*,
  2014 WL 12616763 ............................................................................................. 2, 3, 6, 7

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................................... 9

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) .................................................. 2, 9, 10, 11

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ....................................................................................9
*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ..................................................................................4
*Lyons v. CoxCom, Inc.*,
  No. 08-cv-2047-HCAB (S.D. Cal. Aug. 23, 2010) ..................................................2
*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ................................................................................................9
*Morgan v. AT&T Wireless Servs., Inc.*,
  99 Cal. Rptr. 3d 768 (Ct. App. 2009) .....................................................................11
*Nat'l Rural Telecomms. Coop.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................12
*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .............................................................................4, 11
*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
  No. 94-CV-0403(JG), 2002 WL 2003206, (E.D. N.Y. Aug. 1, 2002) ...................11
*Vasquez v. State of California*,
  45 Cal. 4th 243 (2008), as modified (Dec. 17, 2008) ............................................10
*Viggiano v. Hansen Nat. Bev. Corp.*,
  944 F. Supp. 2d 887 (N.D. Cal. 2013) ......................................................................8
*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................12

**<u>Statutes</u>**

Cal. Civ. Code § 1780(e) ..................................................................................................9
Cal. Code Civ. Proc. 1021.5 .............................................................................................9

**Rules**

Fed. R. Civ. P. 23(e)(5)(A). ..................................................................................... 3

**Regulations**

21 C.F.R. § 170.3(o)(11) ........................................................................................ 8

Plaintiff Jessica Littlejohn ("Plaintiff") respectfully submits this Response to the Objections to Class Action Settlement that were filed by Objectors James Copland (Dkt. No. 34) and David Greenstein (Dkt. Nos. 32 & 36). For the reasons set forth below, the Objections should be overruled in their entirety.

## I. <u>Introduction</u>

The main objective of this lawsuit was to remove the "No Artificial Flavors" claim from the SweeTARTS Product packaging and advertising. The Settlement before the Court accomplishes that very goal. Although Ferrara continues to deny Plaintiff's allegations, it has agreed under the Agreement to remove the "No Artificial Flavors" statement from the SweeTARTS Product packaging and promotional materials (unless any such Product in the future ceases to contain dl-malic acid as an ingredient). In addition, Ferrara will identify "dl-malic acid" as an ingredient on the SweeTARTS Product packaging and promotional materials (for every Product that continues to include dl-malic acid as an ingredient). Agreement at § 4.1.[1] Because the Parties have settled early on, that relief can be provided more quickly, and in fact, Ferrara has already begun implementing such changes. As addressed in the declaration of Andrew Madaychik filed in support of Ferrara's Response to Objections, "Ferrara has already begun the process of redesigning product packaging and promotional materials to remove the phrase 'No Artificial Flavors' from SweeTARTS® packages, and to identify 'dl-malic acid' as an ingredient in SweeTARTS products." (Dkt. No. 40-2 [Madaychick Decl.], ¶ 3).

The Objectors to the Settlement essentially argue that a more favorable settlement could have been obtained or that a fee award is improper in the absence of cash recovery by class members. The Objectors point to cases such as *Bluetooth*

---

[1] "Agreement" refers to the Class Action Settlement Agreement that was filed with the Court in Support of the Parties' Joint Motion for Final Approval of Class Action Settlement. (Dkt. No. 38-4). Unless otherwise noted, capitalized terms used in this Brief have the same meaning as in the Settlement Agreement.

and *Pampers*,[2] where circuit courts have cautioned district courts to scrutinize settlements involving a release of damages claims where the relief is non-monetary. However, the products at issue in *Bluetooth* and *Pampers* cost a significant amount of money ($70-$150 in *Bluetooth*), counsel fees were substantial ($800,000 in *Bluetooth* and $2.73 million in *Pampers*), and it was clear that a more favorable settlement could have been obtained. In this case, by contrast, the Products at issue cost less than $2.00 and damages would have been limited to a price premium, which would amount to no more than just a few pennies for class members. Such a distribution is not economically feasible, and thus, any cash recovery would at most benefit the class indirectly. Here, the class has bargained its contingent claims for small amounts of money for truthful labeling statements. This injunctive relief is appropriate here given the value of that relief and the limited possibility of recovering damages and distributing them in an economically-feasible manner. (*See In re Quaker Oats Labeling Litig.*, 2014 WL 12616763, at *1 (N.D. Cal. 2014)).

*Bluetooth* and *Pampers* did not hold, and no case has ever held, that bargaining injunctive relief in return for release of damages claims is somehow prohibited in class actions. In fact, similar settlements providing significant injunctive relief for the Class, and monetary amounts only for attorney's fees, costs, and incentive payments to the named plaintiffs, have been approved by numerous district courts in this Circuit. *See, e.g., Lyons v. CoxCom, Inc.*, No. 08-cv-2047-HCAB (S.D. Cal. Aug. 23, 2010) (granting final approval of Rule 23(b)(2) settlement where class members did not receive a direct monetary benefit but were required to release monetary claims); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970 (S.D. Cal. 2014) (same); *Guttmann v. Ole Mexican Foods, Inc.*, No. 14-CV-04845-HSG, 2016 WL 91074261 (N.D. Cal. Aug. 1, 2016) (same); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-CV-01570-MMC, 2015 WL 8943150, at *1 (N.D. Cal. Nov. 16, 2015)

---

[2] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) and *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013).

(same); *In re Quaker Oats Labeling Litig.*, No. C 10-0502 RS, 2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014) ("The parties have shown…that a settlement providing only injunctive relief is appropriate here given the value of that relief and the limited possibility of recovering damages and distributing them in an economically-feasible manner.").

Two objections were filed to the Settlement before the Court. Neither has merit. The first was filed by David Greenstein. (Dkt. Nos. 32 & 36). Greenstein's objection is untimely, largely incoherent, and should not be considered by the Court. The second was filed by James Copland. (Dkt. No. 34). The Court should question the motives behind Copland's objection. Copland is an ideologue who is the "director of Legal Policy" at a "free market think tank" called the Manhattan Institute."[3] Furthermore, Copland is represented by Theodore Frank— a serial objector. Mr. Frank's ideological agenda is most apparent in his supporting declaration describing his role as a "professional objector" at the Hamilton Lincoln Law Institute. (Dkt. No. 34-2). Not to mention, Copland does not state in his objection "whether it applies only to the objector, to a specific subset of the class, or to the entire class," as required by Federal Rule of Civil Procedure 23(e)(5)(A). It is clear that Copland and his attorney are seeking to advance their own policy agendas and the objection should not be construed as in the interests of the Class. *See* Fed. R. Civ. P. 23(e)(5)(A). Nonetheless, for the reasons discussed below, Copland's Objection lacks merit and should be overruled in its entirety.

**II.   A District Court Has Broad Discretion to Determine Whether a Class Action Settlement Is Fair, Reasonable, and Adequate**

The Ninth Circuit reviews a district court's approval of a class action settlement for clear abuse of discretion. *Bluetooth*, 654 F.3d at 940 (citing *Rodriguez*

---

[3] *See* https://www.manhattan-institute.org/ (describing the Manhattan Institute); https://www.manhattan-institute.org/expert/james-r-copland (biography of James Copland) (last visited May 22, 2019).

*v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)). "Such review is 'extremely limited,' and [the Ninth Circuit] 'will affirm if the district judge applies the proper legal standard and his findings of fact are not clearly erroneous.'" *Id.* (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). The Ninth Circuit also reviews "for abuse of discretion a district court's award of fees and costs to class counsel, as well as its method of calculation." *Id.* (citing *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148–49 (9th Cir. 2000)).

The Ninth Circuit has identified a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, which may include some or all of the following:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("*Churchill*").

Neither of the Objectors address the *Churchill* factors. As explained in the Parties' Joint Motion for Final Approval (Dkt. No. 30), each of the *Churchill* factors support final approval of this settlement. Greenstein's objection cites no legal authority whatsoever and, in any event, his objection is untimely and should not be considered. (Dkt. No. 36). Copland's objection similarly fails to address the *Churchill* factors, and instead relies primarily on the Ninth Circuit's opinion in *Bluetooth*. As discussed below, however, *Bluetooth* is distinguishable from the present settlement.

### III. *Bluetooth* Is Distinguishable from the Present Settlement

In *Bluetooth*, the Ninth Circuit reviewed a settlement in a products liability class action that provided "the class $100,000 in cy pres awards and zero dollars for

-4-

economic injury, while setting aside up to $800,000 for class counsel and $12,000 for the class representatives—amounts which the court subsequently awarded in full in a separate order." *Bluetooth*, 654 F.3d at 938. The plaintiffs asserted that "defendants knowingly failed to disclose the potential risk of noise-induced hearing loss associated with extended use of their wireless Bluetooth headsets at high volumes" and that "defendants advertised 'talk times' of three hours or longer, while in reality, consumers could not safely use the headsets for more than a few minutes each day without exposing themselves to the risk of noise-induced hearing loss." *Id.* at 939. The plaintiffs sought "actual damages in the amount paid for the product, which they claimed to be between $70 and $150 per headset[.]" *Id.*

"In exchange for plaintiffs' general release and waiver of all asserted claims defendants agreed to: (1) post acoustic safety information on their respective websites and in their product manuals and/or packaging for new Bluetooth headsets; (2) pay a total of $100,000 in cy pres awards to be distributed among four non-profit organizations dedicated to the prevention of hearing loss; (3) pay notice costs up to $1.2 million; (4) pay documented costs to class counsel up to $38,000, or if notice costs fell below $1.2 million, no more than $50,000; (5) pay attorneys' fees in an *940 amount set by the district court, not to exceed $800,000; and (6) pay an incentive award in an amount set by the district court, not to exceed $12,000, to be divided among the nine class representatives." *Id.* at 939-40.

The Ninth Circuit first addressed the award of attorneys' fees to class counsel. *Id.* at 941. The objectors argued that the lodestar method should not have applied and that the district court should have treated the settlement as "producing a 'constructive common fund' and employed a percentage-of-recovery method to assess the reasonableness of the $800,000 fee award, rather than relying exclusively on a lodestar calculation." *Id.* at 943. The court reversed the fee award, in part, because the district court "'saw no need' to calculate a precise lodestar amount in light of defendants' willingness to pay and because reducing the award below

-5-

*Littlejohn v. Ferrara Candy Company,* Case No. 3:18-cv-00658-AJB-WVG
PLAINTIFF'S RESPONSE TO OBJECTIONS

$800,000 would in no way benefit the class or enhance the cy pres award." *Id*. Moreover, the district court failed to perform a cross-check of the lodestar amount under the common fund approach in light of the fact that the settlement included a $100,000 monetary cy pres award. *Id*. at 945. Additionally, the Ninth Circuit held that the value of the injunctive relief was "not apparent to us" because settlement discussions began <u>*after*</u> "defendants had already voluntarily added new warnings to their websites and product manuals." *Id.* at 945 fn. 8.

Unlike *Bluetooth*, where the products cost $70-$150, the monetary claims in this case are inconsequential because SweeTARTS is a low-priced candy product that typically costs less than $2.00. While the plaintiffs in *Bluetooth* sought "actual damages in the amount paid for the product," *Bluetooth*, 654 F.3d at 938, damages in *this* case would be limited to a "price premium" attributable to Ferrara's "No Artificial Flavors" labeling claim. Because a price premium damages model applies, potential recovery to the class would be no more than just a few pennies. It would be economically infeasible to distribute this small sum of money to the class members. Because it could not be economically distributed, any cash recovery awarded to the class here would at most benefit class members indirectly, such as through a cy pres recipient. This would not be a significantly more favorable result for the class. Courts have granted final approval to injunctive relief settlements in similar cases that involve very small sums of money. For example, the Court in *In re Quaker Oats Labeling Litigation* found *Bluetooth* to be distinguishable on similar facts:

> While at first blush, some of the 'warning signs' discussed in [*Bluetooth*] might appear to be present here, the parties have adequately established that the settlement, including the provisions regarding attorney fees, are reasonable, fair, and not the product of collusion, or any disregard for the interests of the class. *Bluetooth* teaches that a district court 'must ensure that both the amount and mode of payment of attorneys' fees are fair, regardless of whether the attorneys' fees come from a common fund or are otherwise paid.'

-6-

*Littlejohn v. Ferrara Candy Company,* Case No. 3:18-cv-00658-AJB-WVG
PLAINTIFF'S RESPONSE TO OBJECTIONS

> Nevertheless, the facts here establish that the fee award in no sense can be seen as diminishing the cash available to the class, as it would in a prototypical 'common fund' case. First, the fee award is based on statute, not a common fund theory. Moreover, were some portion of the amount defendant was willing to pay in fees instead awarded to the members of the class, it would could not be economically distributed, and thus would at most benefit the class indirectly, through a cy pres recipient. Finally, the fees requested are relatively modest, and do not reflect the type of contingency fee 'windfall' that sometimes results when fees are calculated as a percentage of a large cash recovery. Thus, the facts here support no inference of impropriety that would warrant rejecting either the settlement agreement or the requested fees.
>
> In essence, the objections reduce to a complaint that a fee award is improper in the absence of a cash recovery by class members, or that more favorable settlement terms might have been obtainable. The parties have shown, however, that a settlement providing only injunctive relief is appropriate here given the value of that relief and the limited possibility of recovering damages and distributing them in an economically-feasible manner.

*In re Quaker Oats Labeling Litig.*, 2014 WL 12616763, at *1.

As in *In re Quaker Oats*, the injunctive relief here is appropriate given the value of that relief and the limited possibility of recovering damages and distributing them in an economically-feasible manner. Therefore, the objections should be overruled.

### IV. The Injunctive Relief Offered by The Settlement Is Not "Valueless"

Copland suggests that "the record does not show whether defendant is required to do anything at all under the agreement." (Dkt. No. 34 at 15). However, as addressed in the declaration of Andrew Madaychik filed in support of Ferrara's Response to Objections, "Ferrara has already begun the process of redesigning product packaging and promotional materials to remove the phrase 'No Artificial Flavors' from SweeTARTS® packages, and to identify 'dl-malic acid' as an ingredient in SweeTARTS products." (Dkt. No. 40-2 ["Madaychick Decl."], ¶ 3). Copland's suggestion that the SweeTARTS® products may not actually contain dl-

-7-

*Littlejohn v. Ferrara Candy Company,* Case No. 3:18-cv-00658-AJB-WVG
PLAINTIFF'S RESPONSE TO OBJECTIONS

malic acid is a red-herring.[4] The products do in fact contain artificial dl-malic acid and that is precisely why Ferrara is in the process of redesigning its product packaging to list "dl-malic acid" as an ingredient pursuant to the terms of the Settlement Agreement. (*See* Madaychick Decl., ¶ 3).

Copland's argument regarding the difference between artificial dl-malic acid and natural l-malic acid also demonstrates a fundamental misunderstanding about the claims at issue in this case. Ferrara's defense was not whether malic acid is natural or artificial, but rather that malic acid is used in the products as a "flavor enhancer" instead of a flavoring ingredient. *See* 21 C.F.R. § 170.3(o)(11) (defining a flavor enhancer); *Viggiano v. Hansen Nat. Bev. Corp.*, 944 F. Supp. 2d 887, 889-92 (N.D. Cal. 2013) (holding that a soda was accurately labeled as containing "all natural flavors" where the artificial ingredients it contained were used as flavor enhancers and not flavors). The distinction between a flavoring ingredient and a flavor enhancer would certainly devolve into an uncertain "battle of the experts." The injunctive relief provides a real benefit to class without the uncertainties and delay of protracted litigation.

Copland's attempt to distinguish between past and future purchasers of SweeTARTS products is also without merit. As discussed in the declaration of Daniel Hunt filed in support of Ferrara's Response to Objections, "a significant percentage of SweeTARTS® U.S. buyers are repeat buyers who have purchased SweeTARTS® products before." (Dkt. No. 40-3 [Hunt Decl.], ¶ 4). Accordingly, consumers who purchased SweeTARTS® during the class period are indeed likely to be among the group who will purchase them in the future, and they will benefit from the new labeling and marketing material. The injunctive relief provided by this

---

[4] Copland also argues that "In other 'malic acid' suits filed by class counsel, defendants asserted that the plaintiff failed to actually test the accused products." (Dkt. No. 34 at 16). Copland is mistaken. In *Branca v. Bai Brands, LLC,* for example, the Court noted that "Defendants' sanctions arguments are meritless." No. 318CV00757BENKSC, 2019 WL 1082562, at *20 n. 19 (S.D. Cal. Mar. 7, 2019).

settlement has value because it protects the class from further exposure to misleading advertising. Indeed, the "primary form of relief available under [California's consumer protection laws] to protect consumers from unfair business practices is an injunction." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)). The value of the injunctive relief in this case is particularly great given the *de minimums* amount of monetary damages that would be available at trial assuming Plaintiff were to prevail. *See, e.g., Johnson*, 2015 WL 8943150, at *6 (holding that injunctive relief settlement was "fair, reasonable, and adequate" when considering "the realistic range of outcomes[,] including the amount Plaintiff might receive if she prevailed at trial."); *Carr*, 51 F. Supp. 3d at 977 ("this suit has obtained injunctive relief for the class, so it is inaccurate to say that the Class is getting 'nil.' While the Court would have preferred that the Settlement provide the Class with some compensation, the arguments Class Counsel have made concerning the attendant difficulties of administering such relief are legitimate[.]"). Accordingly, the objections should be overruled.

## V. <u>Class Counsel's Modest Fee Request Is Supported Under the Lodestar Approach</u>

Copland argues that because a settlement was reached, Class Counsel are not entitled to attorneys' fees by statute and that the Court must instead analyze fees using the percentage of the common fund approach. (Dkt. No. 34 at 9). This is simply incorrect. As thoroughly discussed in Plaintiff's motion for attorneys' fees (Dkt. No. 30-1 at 2-5), class counsel are entitled to fees under the CLRA, Cal. Civ. Code § 1780(e), and the private attorney general statute, Cal. Code Civ. Proc. 1021.5. Plaintiff is the "prevailing" and "successful" party under the meaning of both statutes. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in section 1021.5, synonymously, because "[t]he language in the two provisions is not materially different."). "[A] party need not prevail on every claim to be considered

-9-

*Littlejohn v. Ferrara Candy Company,* Case No. 3:18-cv-00658-AJB-WVG
PLAINTIFF'S RESPONSE TO OBJECTIONS

a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009) (citation omitted). *See also Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (As with section 1021.5, "[i]t is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes [under the CLRA] if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." (quotation omitted)).

Plaintiff is a prevailing and successful party because the lawsuit "achieved its main litigation objective": (1) removing false or deceptive advertising from the SweeTARTS Product packaging and promotional materials; (2) identifying "dl-malic acid" as an ingredient on the SweeTARTS Product packaging and promotional materials; and (3) implementing the injunctive relief on the SweeTARTS Product packaging and promotional materials by December 31, 2019. Copland's argument that Plaintiff did not reasonably attempt to resolve the matter prior to litigation is also simply wrong. Copland relies on *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) for the proposition that a plaintiff must engage "in a reasonable attempt to settle [her] dispute with the defendant prior to litigation," but the California Supreme Court later held in *Vasquez v. State of California* that section 1021.5 does not require prelitigation demands. 45 Cal. 4th 243, 252 (2008), as modified (Dec. 17, 2008). Indeed, *Graham* was a catalyst theory case where the defendant voluntarily modified its conduct without judicial resolution of the claims at issue. *Graham* "does not hold or, given its context, even suggest that the plaintiff in a noncatalyst case must make a prelitigation settlement demand in order to preserve the right to recover fees under section 1021.5." *Vasquez*, 45 Cal. 4th at 254. Here, Ferrara has agreed to the injunctive relief only upon judicial approval of the parties' class action settlement. Thus, fees are appropriate under section 1021.5 because the result reached in this action is a settlement that provides meaningful injunctive relief. *See Johnson*, 2015 WL 8943150, at *8. Copland's argument

regarding CLRA is equally misguided. It is well established that a plaintiff may file a suit seeking injunctive relief and then later amend to add a claim for damages 30 days or more after a pre-suit notice letter is sent. *Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 789 (Ct. App. 2009).

Because this settlement provides for injunctive relief and statutorily authorized attorneys' fees, the lodestar method clearly applies for purposes of calculating fees. *See Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes….where the relief sought—and obtained—is often ***primarily injunctive in nature and thus not easily monetized***, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.") (emphasis added); *Johnson*, 2015 WL 8943150, at *6 (applying the lodestar method).

As fully discussed in Class Counsel's fee motion, the lodestar method fully supports the requested fee award. Class Counsel is requesting fees in the amount of $235,999.80, which includes a very small multiplier of 1.489. Class counsel is also seeking $36,000.20 in costs, which includes the costs of notice to the class members. The notice costs were paid in advance by class counsel pursuant to the terms of the settlement agreement. This modest fee and expense request does not result in a "windfall" to class counsel and is very modest compared to the fee award that was at issue in *Bluetooth*.

### VI. The Objections to The Incentive Award Are Baseless

Copland and Greenstein also argue that the incentive award to Plaintiff Littlejohn is unwarranted. However, the modest request for a $3,000 incentive award is well in line with Ninth Circuit authority. Incentive awards "are fairly typical in class action cases," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), and "serve an important function in promoting class action settlements," *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, at *5 (E.D. N.Y. Aug. 1, 2002). Although Plaintiff is only seeking $3,000

as an incentive award, an award in the amount of $5,000 would be presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("a $5,000 payment is presumptively reasonable"); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) ("there is ample case law finding $5,000 to be a reasonable amount for an incentive payment.").

### VII. The Small Number of Objections and Opt-Outs Supports Approval of The Settlement

Copland argues that the Court "should not infer class approval from the number of objectors." This argument makes little sense. Out of potentially millions of class members, only two objections and four opt outs have been received. It is well established that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases). Because the reaction from class members has been positive, the settlement should be approved as fair, reasonable, and adequate.

### VIII. Conclusion

For the foregoing reasons, the Court should overrule the objections of James Copland and David Greenstein.

Dated: May 24, 2019          Respectfully Submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON, APLC**
Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin

*mike@consumersadvocates.com*
Lilach Halperin
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Class***